**No.**

# In the United States Court of Appeals for the Ninth Circuit

HASBRO, INC.; WIZARDS OF THE COAST LLC,
DEFENDANTS-PETITIONERS

*v.*

JOHN MILITO,
PLAINTIFF-RESPONDENT

*ON PETITION FOR PERMISSION TO APPEAL*
*FROM THE UNITED STATES DISTRICT COURT*
*FOR THE WESTERN DISTRICT OF WASHINGTON (CIV. NO. 24-1111)*
*(THE HONORABLE BARBARA J. ROTHSTEIN, J.)*

## PETITION FOR PERMISSION TO APPEAL PURSUANT TO THE CLASS ACTION FAIRNESS ACT

KANNON K. SHANMUGAM
MASHA G. HANSFORD
ELEANOR K. RITTER
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
*2001 K Street, N.W.*
*Washington, DC 20006*
*(202) 223-7300*
*mhansford@paulweiss.com*

# TABLE OF CONTENTS

Introduction ........................................ 1

Question presented ........................................ 3

Statement of the facts ........................................ 4

Reasons for granting the petition ........................................ 7

A. This Court has appellate jurisdiction over the entire remand order ........................................ 8

B. The *Coleman* factors weigh strongly in favor of review ........................................ 8

1. This case presents an important CAFA-related question ........................................ 9

2. The CAFA-related question is unsettled and was wrongly decided below ........................................ 11

3. The CAFA-related question is critical to the case at hand ........................................ 19

4. The question will evade effective review if left for consideration only after final judgment ........................................ 20

5. There is no impediment to review ........................................ 21

6. The balance of harms favors appellate review ........................................ 21

Conclusion ........................................ 23

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Abrego Abrego* v. *Dow Chemical Co.*, 443 F.3d 676 (9th Cir. 2006) ................17

*Arias* v. *Residence Inn by Marriott*, 936 F.3d 920 (9th Cir. 2019)..................17

*ASARCO Inc.* v. *Kadish*, 490 U.S. 605 (1989) ..................................................18

*Bateman* v. *American Multi-Cinema, Inc.*,
623 F.3d 708 (9th Cir. 2010)........................................................................20

*BP America, Inc.* v. *Oklahoma ex rel. Edmonson*,
613 F.3d 1029 (10th Cir. 2010).....................................................................22

*BP p.l.c.* v. *Mayor & City Council of Baltimore*,
593 U.S. 230 (2021)........................................................................................8

*Branson* v. *Washington Fine Wine & Spirits, LLC*,
574 P.3d 1031 (Wash. 2025)..................................................2, 13, 14

*City of Reno* v. *Netflix, Inc.*, 52 F.4th 874 (9th Cir. 2022) ...............................18

*Coleman* v. *Estes Express Lines, Inc.*,
627 F.3d 1096 (9th Cir. 2010)...............................................................*passim*

*Dart Cherokee Basin Operating Co.* v. *Owens*, 574 U.S. 81 (2014)...........17, 19

*Department of Justice* v. *Tax Analysts*, 492 U.S. 136 (1989)..........................14

*Department of State* v. *Ray*, 502 U.S. 164 (1991)...............................................14

*Diamond Alternative Energy, LLC* v. *EPA*, 606 U.S. 100 (2025) .............16, 18

*Epic Systems Corp.* v. *Lewis*, 584 U.S. 497 (2018)...........................................20

*FEC* v. *Akins*, 524 U.S. 11 (1998).................................................................12, 13

*Fox* v. *Dakkota Integrated Systems, LLC*, 980 F.3d 1146 (7th Cir. 2020)......10

Page(s)

Cases—continued:

*Inland Empire Waterkeeper* v. *Corona Clay Co.*,
17 F.4th 825 (9th Cir. 2021),
cert. denied, 142 S. Ct. 1444 (2022) .......................................... 12, 13, 14

*Jauregui* v. *Roadrunner Transportation Services, Inc.*,
28 F.4th 989 (9th Cir. 2022) .......................................... 9, 10, 17, 19

*Kohrs* v. *Swift Transportation Co.*, Nos. 24-4483, 24-4872,
2025 WL 3066302 (9th Cir. Nov. 3, 2025) .......................................... 10

*Louisville & Nashville Railroad Co.* v. *Mottley*,
211 U.S. 149 (1908) .......................................... 18

*Magadia* v. *Wal-Mart Associates, Inc.*,
999 F.3d 668 (9th Cir. 2021) .......................................... 6, 14, 16

*Maya* v. *Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) .......................................... 15, 16, 17

*Merrell Dow Pharmaceuticals Inc.* v. *Thompson*,
478 U.S. 804 (1986) .......................................... 19

*Nevada* v. *Bank of America Corp.*, 672 F.3d 661 (9th Cir. 2012) .......................................... 8, 21

*Phillips* v. *Customs & Border Protection*,
74 F.4th 986 (9th Cir. 2023) .......................................... 11

*Polo* v. *Innoventions International, LLC*, 833 F.3d 1193 (9th Cir. 2016) .......................................... 22

*Public Citizen* v. *Department of Justice*, 491 U.S. 440 (1989) .......................................... 12, 13

*Rascon* v. *Benchmark Electronics, Inc.*,
843 Fed. Appx. 968 (9th Cir. Mar. 8, 2021) .......................................... 10

*Reyes* v. *Dollar Tree Stores, Inc.*, 781 F.3d 1185 (9th Cir. 2015) .......................................... 22

*Royal Canin U.S.A., Inc.* v. *Wullschleger*, 604 U.S. 22 (2025) .......................................... 18

*Shulman* v. *Kaplan*, 58 F.4th 404 (9th Cir. 2023) .......................................... 16

Page(s)

Cases—continued:

*Southern Pacific Co.* v. *Denton*, 146 U.S. 202 (1892) .......................................19

*Spokeo, Inc.* v. *Robins*, 578 U.S. 330 (2016) .................................................11, 13

*Standard Fire Insurance Co.* v. *Knowles*, 568 U.S. 588 (2013)..........................9

*Tailford* v. *Experian Information Solutions, Inc.*,
26 F.4th 1092 (9th Cir. 2022) ........................................................................13

*Thakur* v. *Trump*, 148 F.4th 1096 (9th Cir. 2025)............................................15

*TransUnion LLC* v. *Ramirez*, 594 U.S. 413 (2021) ....................................11, 13

*Wakefield* v. *ViSalus, Inc.*, 51 F.4th 1109 (9th Cir.),
cert. denied, 143 S. Ct. 1756 (2022) ..................................................................2

*Walker* v. *City of Lakewood*, 272 F.3d 1114 (9th Cir. 2001).............................15

*Warth* v. *Seldin*, 422 U.S. 490 (1975) ..........................................................16, 18

*Wilderness Society, Inc.* v. *Rey*, 622 F.3d 1251 (9th Cir. 2010)...........12, 13, 15

## CONSTITUTION, STATUTES, AND RULE

U.S. Const. Art. III.........................................................................................*passim*

§ 2.......................................................................................................................23

Class Action Fairness Act.................................................................................*passim*

28 U.S.C. § 1453(c)........................................................................................*passim*

28 U.S.C. § 1453(c)(1) ...........................................................................7, 8, 10

28 U.S.C. § 1453(c)(2) ......................................................................................22

28 U.S.C. § 1453(c)(3) ......................................................................................22

Declaratory Judgment Act, 28 U.S.C. § 2201 ........................................6, 7, 17

Page(s)

Statutes and rule—continued:

Federal Advisory Committee Act, 5 U.S.C. ch. 10 .......................................... 12

Freedom of Information Act, 5 U.S.C. § 552 .............................................. 12, 14

Federal Election Campaign Act, 52 U.S.C. ch. 301 .......................................... 12

Equal Pay and Opportunities Act ............................................................ *passim*

Wash. Rev. Code § 49.58.070(1) ........................................................... 4

Wash. Rev. Code § 49.58.110(1) ........................................................... 4

Wash. Rev. Code § 49.58.110(3) ........................................................... 4

Wash. Rev. Code § 49.58.110(4) ........................................................... 4

28 U.S.C. § 1331 ................................................................................ 18, 19

28 U.S.C. § 1332(d)(2) ............................................................................ 19

28 U.S.C. § 1446(b) ................................................................................ 22

Fed. R. App. P. 5 ..................................................................................... 1

Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1453(c), and Federal Rule of Appellate Procedure 5, Hasbro, Inc. and Wizards of the Coast LLC respectfully petition for permission to appeal the order of the district court dated December 29, 2025, remanding this case to the Superior Court of Washington for King County.

## INTRODUCTION

Respondent has filed a putative class action on behalf of a nationwide class seeking approximately $65 million in damages on the theory that petitioners omitted information about salary ranges in a few dozen job postings. The ultimate question in this case will be whether the Washington State law that purports to authorize such outsize damages violates the federal Constitution. This is a heartland case under the Class Action Fairness Act (CAFA), which allows defendants facing class actions of national scope to proceed in federal court. But the district court remanded the case to state court, taking the view that respondent's own injury is so insubstantial that this case fails to amount to a case or controversy under Article III. This petition presents the recurring and exceptionally important question whether a federal court lacks Article III jurisdiction over a class action properly removed under CAFA that alleges an informational injury under Washington's Equal Pay and Opportunities Act (EPOA).

Respondent John Milito asserts a putative class action against Hasbro, Inc., and Wizards of the Coast LLC under EPOA, which (as relevant here) requires job postings to include information about salary ranges. Under the terms of EPOA, an employer that omits the required information, even inadvertently, is subject to statutory damages of at least $5,000 per applicant. Those damages are available to every person who applied for a position, regardless of whether that person was qualified; resided in Washington; or had any interest in obtaining a job offer, let alone accepting the job. *See Branson* v. *Washington Fine Wine & Spirits, LLC*, 574 P.3d 1031, 1035-1036 (Wash. 2025). As a result, the aggregated damages awarded can be staggering—amounting to millions of dollars for a single mistaken posting even where an employer has a record of compliance and the omission was inadvertent. The crux of the dispute in this case will be whether EPOA's breadth and severity violates the federal Constitution, which protects against the imposition of an award that is "wholly disproportionate" to the harm caused. *Wakefield* v. *ViSalus, Inc.*, 51 F.4th 1109, 1120-1125 (9th Cir.), cert. denied, 143 S. Ct. 1756 (2022).

Despite the nationwide importance of this case, the district court remanded to state court, potentially shielding the substantial constitutional questions from federal-court review. Mistakenly invoking an antiremoval presumption (which has no application in CAFA cases), the district court reasoned

that because Milito, the named plaintiff, asserted in his remand motion that he lacked good faith in applying to the posted job, he should prevail in his argument that he has no Article III injury. The district court's view misconstrued binding standing precedent. And the upshot of the court's approach is that, by asserting his own bad faith, a plaintiff can defeat Congress's stated choice in CAFA to provide a federal forum, maximizing his ability to recover vast damages for an injury that, by the plaintiff's own account, is too insubstantial even to be constitutionally cognizable. Dozens of other pending EPOA actions implicate the same crucial question.

Each of the factors this Court considers in determining whether to grant review of a remand order under CAFA weighs strongly in favor of permitting appeal. Most saliently, this case presents an important CAFA-related question that, absent this Court's intervention, will evade review. And the district court's resolution of that unsettled question was at least fairly debatable, with substantial implications for the federal judicial power and CAFA's ability to function as Congress provided. The petition for permission to appeal should be granted.

## QUESTION PRESENTED

Whether federal courts lack Article III jurisdiction over a class-action lawsuit properly removed under the Class Action Fairness Act that alleges an informational injury under Washington's Equal Pay and Opportunity Act.

## STATEMENT OF THE FACTS

1. In 2022, the Washington State Legislature amended EPOA to include certain disclosure requirements for public-facing job postings. Those amendments took effect on January 1, 2023, and EPOA existed in that form until the legislature further amended it in 2025. As relevant here, EPOA provides that employers with fifteen or more employees "must disclose in each posting for each job offering" (a) the "wage scale or salary range" and (b) "a general description of all of the benefits and other compensation to be offered to the hired applicant." Wash. Rev. Code § 49.58.110(1), (3) (2023). At the time of the alleged violations at issue here, EPOA authorized statutory damages of the greater of $5,000 and actual damages for each "applicant" to a deficient posting, regardless of the circumstances of the violation. *See id.* §§ 49.58.070(1), 49.58.110(4) (2023). The 2023 amendments to EPOA spurred a flood of class-action lawsuits.

2. Petitioner Hasbro, Inc., a defendant below, is a game, intellectual property, and toy company incorporated and headquartered in Rhode Island. Petitioner Wizards of the Coast LLC, also a defendant below, is a wholly owned subsidiary of Hasbro headquartered in Washington, and produces trading-card, roleplaying, and digital games. Respondent John Milito, plaintiff below, alleges he is a Washington State resident. D. Ct. Dkt. 1-3, at ¶ 15 (Compl.).

Milito filed this action in the Superior Court of Washington for King County. Milito's complaint asserts a putative class action "on behalf of individuals who applied to job openings" posted by Hasbro and Wizards (collectively "Hasbro") that "did not include the wage scale or salary range." Compl. ¶ 10. According to the complaint, several of Hasbro's job postings (a small subset of the postings Hasbro made after the disclosure requirement took effect), allegedly failed to disclose the required wage or salary information. *See* Compl. ¶ 22.

Milito's complaint asserts that, because of the alleged violation, he was "forc[ed] . . . to complete the entire application without learning the rate of pay," Compl. ¶¶ 29-30; "lost valuable time," Compl. ¶ 35; was "unable to determine the rate of pay for the position," Compl. ¶ 32; "remains unable to evaluate the pay for the position and compare that pay to other available positions in the marketplace, which negatively impacts [his] current and lifetime wages," Compl. ¶ 33; and has been less able to "negotiate [his] pay," Compl. ¶ 34. The complaint further alleges that Milito "experienced economic and non-economic harm as a direct result" of the alleged violations. Compl. ¶ 36.

Hasbro timely removed this action to federal court under the Class Action Fairness Act (CAFA). *See* D. Ct. Dkt. 1 at 1, 3. The removal notice es-

tablished that Milito's complaint satisfied each requirement for CAFA jurisdiction—namely, it asserted a class of at least 100 members; minimal diversity; and an aggregate amount in controversy exceeding $5 million. *Id.* at 3-8.

Hasbro also filed an answer to Milito's complaint. *See* D. Ct. Dkt. 5. Hasbro subsequently moved to amend the answer to add a counterclaim under the Declaratory Judgment Act, 28 U.S.C. § 2201, asserting that Milito's interpretation of EPOA and the statutory damages he seeks, both individually and as aggregated, violate the federal Constitution. *See* D. Ct. Dkts. 32, 32-1.

3. The district court granted Milito's motion to remand to state court. *See* Ex. A.

Invoking what it called a "strong presumption against removal," the district court ruled that Milito lacks standing. Ex. A, at 4 (internal quotation marks and citation omitted). The court relied on its reasoning in "virtually identically pleaded" EPOA cases against other defendants that it had recently remanded. *Id.* at 5. It took the view that an intangible injury is only cognizable under Article III if it "actually harm[s], or present[s] a material risk of harm" to, a concrete interest. *Id.* at 6-7 (quoting *Magadia* v. *Wal-Mart Associates, Inc.*, 999 F.3d 668, 679 (9th Cir. 2021)). The court did not address Hasbro's argument that Supreme Court precedent establishes that the deprivation of a statutory right to information under a public-disclosure law creates a concrete Article III injury regardless of downstream harm. *See id.* at 4-10.

Relying on cases establishing that a plaintiff's well-pleaded complaint determines *statutory* subject-matter jurisdiction, the district court also held that Hasbro's proposed counterclaim under the Declaratory Judgment Act "is not relevant" to the jurisdictional question. Ex. A, at 9.

The district court further determined that Milito's complaint did not establish a tangible risk of harm. The court acknowledged the complaint's allegations that the failure to provide information "caus[ed] Milito to 'los[e] valuable time,'" "negatively impacted his ability to negotiate," and "caused him economic and non-economic harm." Ex. A, at 7-8. But it deemed those allegations insufficient because "Milito himself argues that he lacks Article III standing" and because "a nominal applicant with no interest in the position will neither receive a benefit from early pay disclosure nor be harmed by the lack thereof." *Id.* at 8. The court also took the view that "any time wasted in applying for a job without good faith is actually a self-inflicted harm." *Id.* at 7 n.4. The court declined to dismiss the action, instead remanding it to allow Milito to proceed in state court. *Id.* at 10.

## REASONS FOR GRANTING THE PETITION

CAFA authorizes a court of appeals to review an order granting or denying a motion to remand. 28 U.S.C. § 1453(c)(1). When deciding whether to grant review under CAFA, this Court considers several factors, including whether the case implicates an important CAFA-related question, whether

the question would evade effective review, and whether the district court's resolution is at least fairly debatable. *Coleman* v. *Estes Express Lines, Inc.*, 627 F.3d 1096, 1100 (9th Cir. 2010) (per curiam). Here, each criterion weighs strongly in favor of review.

### A. This Court Has Appellate Jurisdiction Over The Entire Remand Order

When a case removed under CAFA is subsequently remanded, a federal court of appeals has jurisdiction to review the "order of a district court granting . . . a motion to remand," 28 U.S.C. § 1453(c)(1), which includes review of any ground for remand addressed by the district court. *Nevada* v. *Bank of America Corp.*, 672 F.3d 661, 672-673 (9th Cir. 2012); *see BP p.l.c.* v. *Mayor & City Council of Baltimore*, 593 U.S. 230, 234, 237-239 (2021) (holding that, when a case is removed under the federal-officer removal statute, all the issues in the remand order are "reviewable on appeal"). Hasbro invoked CAFA as a basis for removal. *See* D. Ct. Dkt. 1, at 1, 3. "Once that happened and the district court ordered the case remanded to state court, the whole of its order became reviewable on appeal." *BP*, 593 U.S. at 238.

### B. The *Coleman* Factors Weigh Strongly In Favor Of Review

When deciding whether to grant review under CAFA, this Court considers six non-exhaustive criteria: (1) "the presence of an important CAFA-related question"; (2) whether "the CAFA-related question is unsettled," particularly if the district court's decision was incorrect or at least "fairly debatable";

(3) "the importance of the CAFA-related question to the case at hand"; (4) "the likelihood that the question will evade effective review if left for consideration only after final judgment"; (5) "whether the record is sufficiently developed and the order sufficiently final to permit intelligent review"; and (6) "the balance of the harms." *Coleman*, 627 F.3d at 1100 (internal quotation marks and citation omitted). Those criteria are "guides," not "bright-line rules"; the decision "whether to permit appeal . . . is ultimately 'committed to the informed discretion' of the appellate court." *Id.* (citation omitted). Here, each factor weighs strongly in favor of review.

### 1. This Case Presents An Important CAFA-Related Question

This case presents an important and recurring question about the power of federal courts to hear CAFA cases that allege an informational injury. Class-action cases such as this one—which both expose defendants to massive liability and implicate questions of national importance, including the fundamental protections of the federal Constitution—are exactly the type of cases that Congress intended federal courts to hear through CAFA. *See Standard Fire Insurance Co.* v. *Knowles*, 568 U.S. 588, 595 (2013). And the district court's unduly narrow view of standing allows plaintiffs to seek massive damages in class actions in state court by relying on their own lack of good faith—a result that both misconstrues Article III law and is grossly inequitable. In addition, the court's reasoning reflects an implicit and explicit "presumption

against CAFA's jurisdiction," which itself warrants immediate review. *Jauregui* v. *Roadrunner Transportation Services, Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (emphasis omitted).

Reflecting the importance of protecting CAFA jurisdiction from this type of error, the Seventh Circuit granted Section 1453(c)(1) review and reversed a district court's order that had remanded a CAFA case for lack of Article III standing. *See Fox* v. *Dakkota Integrated Systems, LLC*, 980 F.3d 1146, 1149 (2020). More broadly, this Court frequently grants Section 1453(c)(1) petitions to review CAFA-related questions about threshold reasons invoked by a district court to remand a case that meets CAFA's statutory criteria. *See*, *e.g.*, *Kohrs* v. *Swift Transportation Co.*, Nos. 24-4483, 24-4872, 2025 WL 3066302, at *1 (9th Cir. Nov. 3, 2025); *Rascon* v. *Benchmark Electronics, Inc.*, 843 Fed. Appx. 968, 969 (9th Cir. Mar. 8, 2021) (mem.).

In addition to its substantial practical and legal significance in this case, the question is particularly worthy of this Court's review because it is frequently recurring. The question has arisen in many cases in recent months, resulting in at least 20 remand orders in EPOA cases. *See* Ex. B (listing cases). Without this Court's review, EPOA cases will be relegated to state court en masse.

### 2. The CAFA-Related Question Is Unsettled And Was Wrongly Decided Below

The question in this case implicates an unsettled area of law: what it takes to establish standing after the Supreme Court's decisions in *Spokeo, Inc.* v. *Robins*, 578 U.S. 330 (2016), and *TransUnion LLC* v. *Ramirez*, 594 U.S. 413 (2021). The district court's resolution is at least fairly debatable. In fact, the district court wrongly decided that question, incorrectly imposing a risk-of-material-harm requirement. And it separately erred by deeming insufficient the complaint's allegations of concrete harm, adopting a mistaken presumption against removal that gives plaintiffs carte blanche to defeat CAFA jurisdiction by asserting their own bad faith in applying to a particular job.

a. Milito's complaint alleges that he did not receive a piece of information (the salary or wage range) that EPOA required to be publicly disclosed and available to all applicants. That is a classic informational injury cognizable under Article III regardless of downstream harm.

i. An intangible injury is cognizable under Article III in two circumstances: either when it inflicts (or creates a material risk of) tangible harm, or when it "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Phillips* v. *Customs & Border Protection*, 74 F.4th 986, 991 (9th Cir. 2023) (quoting *Spokeo*, 578 U.S. at 340-341). The informational injury at issue here falls squarely in the latter category.

The Supreme Court has specifically recognized that an individual suffers a cognizable injury-in-fact for purposes of Article III when "the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *FEC* v. *Akins*, 524 U.S. 11, 21 (1998) (citing *Public Citizen* v. *Department of Justice*, 491 U.S. 440, 449 (1989)). Where a statute "seek[s] to protect individuals such as [the plaintiffs]" from "failing to receive particular information about" a specific subject, and the plaintiffs are deprived of their ability to obtain that information, that "informational injury," standing alone, can satisfy Article III. *Id.* at 22, 24-25.

Explicating those precedents, this Court has reasoned that whether the deprivation of a "statutory right[] to information" "give[s] rise to concrete injury sufficient for the purposes of Article III standing" turns on the nature of the statute. *Wilderness Society, Inc.* v. *Rey*, 622 F.3d 1251, 1258-1259 (9th Cir. 2010); *see Inland Empire Waterkeeper* v. *Corona Clay Co.*, 17 F.4th 825, 833 (9th Cir. 2021), cert. denied, 142 S. Ct. 1444 (2022). If a statute has the "goal of providing information to the public," then it "grant[s] a right to information capable of supporting a lawsuit." *Rey*, 622 F.3d at 1259 (citation omitted); *see Inland Empire*, 17 F.4th at 833. Examples of federal information-providing statutes include the Freedom of Information Act (FOIA), the Federal Advisory Committee Act, and the Federal Election Campaign Act. *See Rey*, 622 F.3d at 1258.

Importantly, the Supreme Court preserved the informational standing line of cases in its decisions in *Spokeo* and *TransUnion*. In *Spokeo*, the Supreme Court recognized that, in certain cases, a plaintiff "need not allege any *additional* harm beyond the one that Congress has identified," and it specifically cited the "failure to obtain information" at issue in *Akins* and *Public Citizen* as an example. 578 U.S. at 342. And in *TransUnion*, the Court rejected the plaintiffs' informational-injury theory, but only because the plaintiffs "did not allege that they failed to receive any required information," arguing "only that they received [the required information] *in the wrong format*." 594 U.S. at 441; *see Tailford* v. *Experian Information Solutions, Inc.*, 26 F.4th 1092, 1100-1101 (9th Cir. 2022) (distinguishing *TransUnion* on that basis). Further illustrating that *TransUnion* preserved the cases holding that public-disclosure laws identify a cognizable informational injury, the Supreme Court emphasized that the case did not "involve[] denial of information subject to public-disclosure or sunshine laws that entitle all members of the public to certain information." *TransUnion*, 594 U.S. at 441.

EPOA, as interpreted by the Washington Supreme Court in *Branson*, is unequivocally a statute that has the "goal of providing information to the public," *Rey*, 622 F.3d at 1259, and that "provides a right to information," *Inland Empire*, 17 F.4th at 833. In *Branson* v. *Washington Fine Wine & Spirits, LLC*, 574 P.3d 1031 (Wash. 2025), the Washington Supreme Court rejected the

argument that EPOA's disclosure remedies be limited to individuals who seek to obtain an offer of employment and so themselves face a risk of harm in employment negotiations. *See id*. at 1036, 1040. Instead, it emphasized that the Washington State Legislature created a broad informational entitlement for any applicant in service of its view that providing "pay-related information *before* [individuals] apply for a job" serves various public interests, like "combat[ing] pay inequity, avoid[ing] wasted time, and mak[ing] [the job] market more competitive." *Id*. at 1037 (internal quotation marks omitted). That is closely analogous to the purposes of FOIA, the prototypical public-disclosure statute, which adopts a policy of broad disclosure for all applicants in order to "ensure an informed citizenry." *Department of Justice* v. *Tax Analysts*, 492 U.S. 136, 142 (1989) (citation omitted); *see Department of State* v. *Ray*, 502 U.S. 164, 177 (1991).

ii. Instead of evaluating this action under the relevant informational-injury precedents, the district court read this Court's decision in *Magadia* v. *Wal-Mart Associates, Inc.*, 999 F.3d 668, 679 (9th Cir. 2021), to hold that an additional showing of injury beyond the deprivation of information is required to satisfy Article III. *See* Ex. A, at 6-7. That was erroneous.

*Magadia* addressed a different type of statute: one that required the disclosure of information on employees' pay stub in order to protect those same employees from the risk of underpayment. *Magadia*, 999 F.3d at 679.

That statute sought to protect a specific class of plaintiffs from downstream harm, to which information disclosure was merely incidental. EPOA, by contrast, creates "a right to information per se." *Rey*, 622 F.3d at 1259.

b. i. In any event, even if a showing of a concrete injury beyond the deprivation of statutorily required information were required, Milito's complaint alleges downstream harm that is sufficient to establish Article III standing.

The complaint specifically alleges that Milito "lost valuable time applying for the position" and was "forc[ed] . . . to complete the entire application without learning the rate of pay." Compl. ¶¶ 30, 35. Lost time is a concrete and particularized injury for purposes of Article III. *See Thakur* v. *Trump*, 148 F.4th 1096, 1105 (9th Cir. 2025); *Walker* v. *City of Lakewood*, 272 F.3d 1114, 1124-1125 (9th Cir. 2001).

In addition, Milito's complaint alleges that he was "unable to evaluate the pay for the position and compare that pay to other available positions in the marketplace," which "negatively impact[ed] Plaintiff's current and lifetime wages," that his "ability to negotiate pay remains adversely affected," and that the alleged deprivation of information had the "direct result" of causing him "economic and non-economic harm." Compl. ¶¶ 33-34, 36. Because this case is at the pleading stage, the court must take those allegations as "embrac[ing] those specific facts that are necessary to support the claim." *Maya* v. *Centex*

*Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (citation omitted). The complaint therefore asserts a pocketbook harm, and "[m]onetary costs are of course an injury." *Diamond Alternative Energy, LLC* v. *EPA*, 606 U.S. 100, 111 (2025) (citation omitted).

Finally, the complaint alleges that Milito "was qualified to perform the position for which he applied," Compl. ¶ 27, establishing a likelihood that he would obtain an interview and engage in salary negotiations, or seek other positions for which the proposed salary level would be relevant. The complaint thus plausibly pleads that the alleged violation created a "material risk of harm" to Milito's interest in obtaining a job offer at the highest possible salary. *Magadia*, 999 F.3d at 679.

ii. The district court declined to credit those specific allegations in Milito's complaint, choosing to give dispositive weight to his made-to-defeat-federal-jurisdiction argument that he lacked good faith when he applied for Hasbro's posting. Ex A, at 7 & n.4, 8. But construing the complaint "in favor of the complaining party," *Warth* v. *Seldin*, 422 U.S. 490, 501 (1975), does not mean accepting a plaintiff's insistence in subsequent motion practice that he lacks Article III standing. Instead, it means "accept[ing] all facts alleged in the complaint as true," *Shulman* v. *Kaplan*, 58 F.4th 404, 408 (9th Cir. 2023), and "presum[ing] that general allegations embrace those specific facts that are necessary to support the claim" of injury, *Maya*, 658 F.3d at 1068 (citation

omitted). And here, those allegations and representations establish concrete harm.

The district court's deference to Milito's assertion that he lacks standing stems from an additional legal error: its view that Hasbro had to "overcome a 'strong presumption' against removal" to proceed in federal court under CAFA. Ex. A, at 4 (quoting *Abrego Abrego* v. *Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006)). In fact, however, "no antiremoval presumption attends cases invoking CAFA." *See Arias* v. *Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (quoting *Dart Cherokee Basin Operating Co.* v. *Owens*, 574 U.S. 81, 89 (2014)).

This Court has previously agreed to review and reverse a remand order that "imposed—both explicitly and in its analysis—a presumption against CAFA's jurisdiction." *Jauregui*, 28 F.4th at 993. The district court's order here likewise warrants review (and reversal).

c. At a minimum, the district court should have allowed Hasbro's counterclaim to proceed in federal court. Below, Hasbro moved to add a counterclaim under the Declaratory Judgment Act, 28 U.S.C. § 2201, asserting that Milito's interpretation of EPOA and the statutory damages he seeks, both individually and as aggregated, violate the federal Constitution. On that counterclaim, Hasbro is the plaintiff seeking to avail itself of the Court's jurisdiction. In a "defensive" declaratory judgment action of that sort, the *cause of*

*action* and the *statutory basis* for the court's subject-matter jurisdiction are based on Milito's underlying action. *See City of Reno* v. *Netflix, Inc.*, 52 F.4th 874, 879 (9th Cir. 2022). But for purposes of assessing standing, what matters is whether "the party attempting to invoke the federal judicial power" (here, Hasbro) has a cognizable injury. *ASARCO Inc.* v. *Kadish*, 490 U.S. 605, 618 (1989); *see id.* at 618-619; *Warth*, 422 U.S. at 498. It does.

It is beyond serious dispute that Hasbro, as the party invoking federal jurisdiction, has standing as to its declaratory-judgment counterclaim challenging EPOA's constitutionality, because prevailing in that action would redress the threat of a nearly $65 million judgment that Milito seeks to impose on Hasbro in violation of federal law. *See Diamond*, 606 U.S. at 111.

The district court did not rule that Hasbro lacks standing as to its counterclaim. Instead, it declined to consider the counterclaim based on its view that "a counterclaim is not relevant to whether the district court has original jurisdiction over a civil action" because "jurisdiction is based only on the allegations in the plaintiff's well-pleaded complaint." Ex. A, at 9 (internal quotation marks and citation omitted). That conflates the different types of jurisdiction. The well-pleaded complaint rule relates to a federal court's *statutory* jurisdiction—federal-question jurisdiction under 28 U.S.C. § 1331. *See Royal Canin U.S.A., Inc.* v. *Wullschleger*, 604 U.S. 22, 26 (2025); *Louisville & Nashville Railroad Co.* v. *Mottley*, 211 U.S. 149, 152-153 (1908). It does not concern

jurisdiction under Article III, which is broader in scope. *See Merrell Dow Pharmaceuticals Inc.* v. *Thompson*, 478 U.S. 804, 807-808 (1986). Because Hasbro has standing to pursue its counterclaim, the district court should not have remanded this case.

### 3. The CAFA-Related Question Is Critical To The Case At Hand

The question presented is critical to the resolution of this case because the district court's erroneous holding that Milito lacked Article III standing was its sole basis for remanding this case, which satisfies each statutory requirement for CAFA removal. *See* Ex. A, at 4-10; *see* 28 U.S.C. § 1332(d)(2).

Hasbro's ability to defend this case in a federal forum is itself critical. CAFA reflects "a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Jauregui*, 28 F.4th at 993 (quoting *Dart Cherokee*, 574 U.S. at 89). A defendant that has properly removed a case from state court has a "right and privilege secured" by "the [C]onstitution and laws of the United States" to proceed with the litigation in federal court. *Southern Pacific Co.* v. *Denton*, 146 U.S. 202, 207 (1892). That "right and privilege" is particularly important to Hasbro: absent this Court's review, the district court's error would deprive it of a federal forum to defend a nationwide class action that threatens to impose tens of millions of dollars of damages in violation of the federal Constitution.

#### 4. The Question Will Evade Effective Review If Left For Consideration Only After Final Judgment

If this Court declines review of the remand order, the Article III question will evade review. "The probability that a state court or the Supreme Court will review the federal jurisdictional question after the merits of the case have been decided is almost non-existent." *Coleman*, 627 F.3d at 1101. Therefore, absent this Court's review of the remand order, the important Article III question at stake here—and district courts' pattern of remanding CAFA cases based on mistaken Article III reasoning—will evade review.

Making matters worse, there is tremendous pressure on class-action defendants to settle even unmeritorious claims. "[E]ven in the mine-run case, a class action can result in potentially ruinous liability." *Bateman* v. *American Multi-Cinema, Inc.*, 623 F.3d 708, 721 (9th Cir. 2010) (internal quotation marks and citation omitted); *see Epic Systems Corp.* v. *Lewis*, 584 U.S. 497, 524 (2018) (observing that class actions "can unfairly place pressure on the defendant to settle even unmeritorious claims") (internal quotation marks, citation, and alteration omitted). That pressure is particularly stark here given EPOA's draconian damages regime. For that reason, both the important Article III question presented here and the important federal constitutional questions at issue on the merits are likely to evade review absent this Court's intervention now.

#### 5. There Is No Impediment To Review

If this Court grants the petition, it will face no barrier to deciding the question presented. That question is purely legal in nature; no additional factual development is required. *Coleman*, 627 F.3d at 1100 (favoring review where "the record is sufficiently developed and the order sufficiently final to permit 'intelligent review'") (citation omitted). Because "[t]he issues were fully briefed below" and "result[ed] in a reasoned remand order"—an order that turned exclusively on the question presented—this case is "well-positioned" for this Court's review. *Id.* at 1101.

#### 6. The Balance of Harms Favors Appellate Review

The risk of harm to Hasbro from denying review far outweighs any potential harm to Milito. This case raises profound questions of federal law and squarely implicates Congress's concerns in enacting CAFA. The decision below, if allowed to stand, could eliminate Hasbro's access to the federal forum to which it is entitled under CAFA. *See Coleman*, 627 F.3d at 1101. The denial of that forum would be especially harmful in light of EPOA's statutory damages regime, which exposes Hasbro to the threat of crushing liability for a small number of inadvertent technical violations.

In addition, declining review may "result in wasted judicial resources," *Nevada*, 672 F.3d at 674: if a class is certified and factual development reveals that at least some of the applicants to the challenged postings were "bona fide"

applicants, Hasbro would be able to re-remove the case to federal court, *see* 28 U.S.C. § 1446(b); *Reyes* v. *Dollar Tree Stores, Inc.*, 781 F.3d 1185, 1186-1189 (9th Cir. 2015)—resulting in inefficient "jurisdictional ping-pong" that this Court disfavors. *Polo* v. *Innoventions International, LLC*, 833 F.3d 1193, 1197 (9th Cir. 2016) (citation omitted). And that inefficiency would be exacerbated by continuing uncertainty absent a decision from this Court as to what constitutes a sufficient Article III injury in this context.

On the other side of the scale, "the only harm" Milito "and the [putative] class will suffer if the remand order is appealed is delay." *Coleman*, 627 F.3d at 1101. Any risk of harm to Milito from delay is minimal given the speed with which a CAFA appeal proceeds. *See* 28 U.S.C. § 1453(c)(2)-(3). That is particularly so because "no discovery has been taken" and there are "no ongoing proceedings" in Washington state court with which this Court "might interfere." *BP America, Inc.* v. *Oklahoma ex rel. Edmonson*, 613 F.3d 1029, 1035 (10th Cir. 2010).

* * *

Milito's theory in this case is that the injury he asserts from the omission of wage and salary information is so insubstantial that his complaint does not implicate a "case[]" or "controvers[y]." U.S. Const. Art. III, § 2. Yet he insists that the same "insubstantial" violation should subject Hasbro to at least $5,000 statutory damages per applicant for a staggering award of almost $65 million

for the putative class. That approach violates core guarantees of the federal Constitution. And it simply cannot be right that federal courts are powerless to hear a case of this magnitude, which turns on the interpretation of federal law, on the theory that the dispute is too insubstantial even to entertain. This Court's review is warranted to restore Hasbro's right to defend this CAFA action in federal court.

## CONCLUSION

The petition for permission to appeal should be granted.

Respectfully submitted,

/s/ Masha G. Hansford
KANNON K. SHANMUGAM
MASHA G. HANSFORD
ELEANOR K. RITTER
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
*2001 K Street, N.W.*
*Washington, DC 20006*
*(202) 223-7300*
*mhansford@paulweiss.com*

DATED: JANUARY 8, 2026

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Petition for Permission to Appeal Pursuant to the Class Action Fairness Act complies with the type size and typeface requirements of the Federal Rules of Appellate Procedure 5(c), 32(a), and 32(c)(2). Under Federal Rule 32(g)(1), I certify that the foregoing petition contains 5,195 words, excluding the items exempted from Federal Rule 5(c) and Ninth Circuit Rule 5-2(b). I further certify that this word count complies with the word limit of Federal Rule 5(c) and Ninth Circuit Rule 5-2(b).

/s/ Masha G. Hansford
MASHA G. HANSFORD

DATED: JANUARY 8, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2026, I electronically filed the foregoing petition for permission to appeal pursuant to the Class Action Fairness Act with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system.

I also certify that a true copy of the foregoing document was mailed to:

Hon. Barbara J. Rothstein
United States District Court
Western District of Washington
United States Courthouse, Courtroom Suite 16106
700 Stewart Street, Suite 8230
Seattle, WA 98101

I further certify that a true copy of the foregoing document was served electronically on counsel of record for respondent:

Timothy W. Emery, Esq.
Emery Reddy, PLLC
600 Stewart St.
Suite 1100
Seattle, WA 98101
emeryt@emeryreddy.com

/s/ Masha G. Hansford
MASHA G. HANSFORD

DATED: JANUARY 8, 2026

# EXHIBIT A

The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN MILITO,

Plaintiff,

v.

WIZARDS OF THE COAST LLC, *et al.*,

Defendants.

NO. 24-cv-1111-BJR

**ORDER GRANTING REMAND**

## I. INTRODUCTION

Plaintiff, John Milito, originally filed this case in King County Superior Court alleging that Defendants, Wizards of the Coast, LLC and Hasbro Inc., had violated a specific provision of Washington State's Equal Pay and Opportunities Act ("EPOA"), RCW 49.58.110, which requires certain employers to disclose the wage scale or salary range, and a general description of other compensation and benefits, in each posting for an available position.[1] Defendants removed the case to this Court on the basis of diversity jurisdiction and under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). *See* Notice of Removal, ECF No. 1. Now pending before the Court

[1] A detailed statutory background may be found in this Court's decisions in related cases. *See, e.g.*, *Floyd v. Insight Global LLC, et al.*, 23-CV-1680-BJR, 2024 WL 2133370, at *1-2 (W.D. Wash. May 10, 2024); *Atkinson v. Aaron's LLC, et al.*, 23-CV-1742-BJR, 2024 WL 2133358, at *1-2 (W.D. Wash. May 10, 2024).

is Plaintiff's Motion to Remand, ECF No. 22, and Defendants' motion to amend their answer, ECF No. 32.[2] Having reviewed the materials,[3] the record of the case, and the relevant legal authorities, the Court will grant Plaintiff's motion and remand this case to King County Superior Court. The reasoning for the Court's decision follows.

## II. BACKGROUND

On May 31, 2024, John Milito applied for a job opening with Defendants in King County, Washington. Compl. ¶¶ 15, 26, ECF No. 1-3. He alleges that the posting for the job opening did not disclose the wage scale or salary range to be offered. *Id.* ¶¶ 28-31; Ex.1. He further alleges that he "expected that at some point he would learn the rate of pay for the open position . . .[but] Defendants withheld the rate of pay for the open position in the job posting and throughout the application process, forcing Plaintiff to complete the entire application without learning the rate of pay." *Id.* ¶¶ 29-30. Mr. Milito alleges that he lost time applying for a position for which the wage scale was not disclosed and his ability to negotiate pay is adversely affected. *Id.* ¶¶ 34-35. Mr. Milito also claims to represent "dozens" ("more than 40") potential class members who also applied for jobs with Defendants for positions that did not disclose the wage scale or salary range. *Id.* ¶¶ 10, 22, 43. Mr. Milito's complaint was virtually identical to numerous other putative class-action lawsuits filed by multiple plaintiffs represented by Emery Reddy, PLLC, and subsequently removed to this Court by the defendants. Mr. Milito filed the pending motion seeking remand back to state court, asserting that this Court lacks subject matter jurisdiction because he lacks Article III standing

---

[2] In the interim period, the Court stayed this case and deferred ruling on all pending motions pending the Washington Supreme Court's opinion on the certified question in a related case. *See* Stay Order, ECF No. 19. The stay was lifted on September 29, 2025. Lift Stay Order, ECF No. 21.

[3] Including Plaintiff's remand motion, ECF No. 22; response in opposition, ECF No. 26; and reply, ECF No. 38. Defendant's motion, ECF No. 32, is not yet ripe for decision.

to proceed in federal court. Mot. Remand 1. He also argues, in the alternative, that remand is required because CAFA's mandatory and discretionary exceptions apply. *Id.*

On August 20, 2024, the Honorable Judge Chun certified a question in a similar case to the Washington Supreme Court, asking it to interpret the term "job applicant" as used in the EPOA statute. *Branson v. Washington Fine Wines & Spirits, LLC*, 2:24-CV-00589-JHC, 2024 WL 4510680, at *1 (W.D. Wash. Aug. 20, 2024), *certified question accepted*, 103394-0, 2024 WL 4471756 (Wash. Oct. 11, 2024)). The Court stayed this case pending the state Supreme Court's decision on the certified question. *See* Stay Order, ECF No. 19. On September 4, 2025, the Washington Supreme Court issued its decision. *Branson v. Wash. Fine Wine & Spirits, LLC*, No. 103394-0, 2025 WL 2536266, 574 P.3d 1031 (Sept. 4, 2025) (en banc). The Court concluded:

> A job applicant need not prove they are a "bona fide" applicant to be deemed a "job applicant." Rather, in accordance with the plain language of RCW 49.58.110(4), a person must apply to any solicitation intended to recruit job applicants for a specific available position to be considered a "job applicant," regardless of the person's subjective intent in applying for the specific position.

*Id.* at *8. The stay has been lifted, and the parties' motions will now be addressed. Lift Stay Order, ECF No. 21.

## III. LEGAL STANDARD

A defendant may remove to federal court any case filed in state court over which the federal court would have original jurisdiction. 28 U.S.C. § 1441(a). Federal question jurisdiction exists over "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The general rule, referred to as the 'well-pleaded complaint rule,' is that a civil action arises under federal law for purposes of § 1331 when a federal question appears on the face of the complaint." *City of Oakland v. BP PLC*, 969 F.3d 895, 903 (9th Cir. 2020) (quoting *Caterpillar*

*Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Jurisdiction is based on the pleadings filed at the time of removal and is based "solely on the plaintiff's claims for relief and not on anticipated defenses to those claims." *Id.* (quoting *ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality of Mont.*, 213 F.3d 1108, 1113 (9th Cir. 2000)).

Removal requirements should be strictly construed. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). A removing party bears the burden of establishing federal jurisdiction and must overcome a "strong presumption" against removal. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). Federal jurisdiction "must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566. "[T]he court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing *Gaus*, 980 F.3d at 566). If at any time before final judgment it appears that the federal district court lacks subject matter jurisdiction, "the case shall be remanded" to state court. 28 U.S.C. § 1447(c); *see also Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).

## IV. DISCUSSION

Mr. Molito requests that this matter be remanded for lack of Article III standing and subject matter jurisdiction. Mot. Remand 1, 2 (citing similar cases that have been remanded). "Under Article III, the Federal Judiciary is vested with the 'Power' to resolve not questions and issues but 'Cases' or 'Controversies.'" *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132 (2011). "Among other things, that limitation requires a plaintiff to have standing." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 295–96 (2022). In the context of a class action, the class representatives must have standing. *See NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf

of himself or any other member of the class.") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974))); s*ee also Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) ("[S]tanding is the threshold issue in any suit. If the individual plaintiff lacks standing, the court need never reach the class action issue."). Whether plaintiffs have Article III standing to proceed with this lawsuit implicates the Court's subject matter jurisdiction. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975) (stating that standing is jurisdictional).

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) ((citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

As Mr. Milito argues, this Court has found in similar— virtually identically pleaded—cases, that the plaintiffs failed to allege that they applied for the posted positions in good faith with a genuine interest in employment with the employer. *See, e.g.*, *Floyd v. Insight Global, LLC*, No. 2:23-cv-01680-BJR (W.D. Wash.); *Atkinson v. Aaron's, LLC*, No. 2:23-cv-01742-BJR (W.D. Wash.); *David v. Herc Rentals Inc.*, No. 2:24-cv-00175-BJR (W.D. Wash.). At issue in those cases, as here, is the "[f]irst and foremost" of standing's three requirements—"a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (citations omitted).

To establish an injury in fact, plaintiffs must show that they suffered "an invasion of a legally protected interest." *Lujan*, 504 U.S. at 560 (citations omitted). Injury is particularized if it

affects a plaintiff "in a personal and individual way." *Id.* at 560 n.1. And it is concrete if it "actually exist[s]," meaning that it is "real, and not abstract." *Spokeo, Inc. v. Robins (Spokeo I)*, 578 U.S. 330, 340 (2016) *as revised* (May 24, 2016) (citations omitted). Importantly, "Article III standing requires a concrete injury *even in the context of a statutory violation*." *Id.* at 341 (emphasis added). A plaintiff may not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* "[T]he Supreme Court made clear that a plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Robins v. Spokeo, Inc. (Spokeo II)*, 867 F.3d 1108, 1112 (9th Cir. 2017) (quoting *Spokeo I*, 578 U.S. at 341). To establish a concrete injury, "the plaintiff must allege a statutory violation that caused him to suffer some harm that 'actually exist[s]' in the world; there must be an injury that is 'real' and not 'abstract' or merely 'procedural.'" *Id.* (quoting *Spokeo I*, 578 U.S. at 340).

Intangible injuries, such as the omission of statutorily required information, "can nevertheless be concrete." *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 679 (9th Cir. 2021) (quoting *Spokeo I*, 578 U.S. at 340). "[A]n *intangible* injury may be concrete if it presents a material risk of *tangible* harm or 'has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts,' like common law torts or certain constitutional violations." *Phillips v. United States Customs & Border Prot.*, 74 F.4th 986, 991 (9th Cir. 2023) (quoting *Spokeo I*, 578 U.S. at 340-41). To determine whether the violation of a statute constitutes a concrete harm, the Ninth Circuit engages in a two-part inquiry. *Magadia*, 999 F.3d at 679. First, a court considers "whether the statutory provisions at issue were established to protect . . . concrete interests (as opposed to purely procedural rights)." *Id.* (citation omitted). The court then

assesses "whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Id.*

In *Floyd* and *Atkinson*, referred to above, this Court further reviewed various cases that analyzed statutory violations in the context of Article III standing and concluded that the statutory violation at issue here is distinctly different from those cases that relate to privacy interests or where misleading information creates a risk of harm. *See* 2:23-cv-01680-BJR; No. 2:23-cv-01742-BJR. The Court found that in cases such as these, there is no obvious analogue in the history of American courts and plaintiffs must allege some personal harm. *Id.* Indeed, in *Magadia*, the Ninth Circuit Court confirmed that the "'procedural violation of an informational entitlement does not by itself suffice to keep a claim in federal court.' The plaintiff must further allege 'at least that the information had some relevance to *her*.'" 999 F.3d at 679-80 (quoting *Brintley v. Aeroquip Credit Union*, 936 F.3d 489, 493 (6th Cir. 2019)). This Court concluded that a violation of the statutory provision at issue here—a job posting with no compensation information included—is a technical or procedural violation that by itself does not manifest concrete injury but requires a bona fide applicant before there is a risk of harm. Plaintiffs must allege, at minimum, that they applied for the job with good-faith intent, and became personally exposed to the risk of harm caused by the violation.

Defendants argue that Mr. Milito alleged actual harm by pleading that he "was qualified to perform the position for which he applied," and Defendants' "failure to provide statutorily required information 'forc[ed] [Milito] to complete the entire application without learning the rate of pay,' thereby causing Milito to 'los[e] valuable time.'" Opp'n 6 (quoting Compl. ¶¶ 27, 30, 35).[4]

[4] The Court notes that any time wasted in applying for a job without good faith is actually a self-inflicted harm.

Defendants also cite Mr. Milito's allegations that his inability to evaluate and compare pay to other available positions negatively impacted his ability to negotiate, which caused him economic and non-economic harm. *Id.* (citing Compl. ¶¶ 33, 34, 36, 37). Defendants contend that these allegations represent a cognizable informational injury and no further showing of harm is required. *Id.* at 11.

The Court disagrees. Mr. Milito's allegations fail to show any actual harm against which the EPOA intends to protect. *See Hill v. ACV Auctions Inc.*, No. C25-616 MJP, 2025 WL 1582249, at *3 (W.D. Wash. June 4, 2025) (concluding that the EPOA's legislative history "confirms that the EPOA's procedural requirement of disclosure was established to protect applicants by arming them with sufficient information to ensure fair and equitable pay negotiations, and to avoid wasting time interviewing for positions whose pay would never be adequate."); *see also Partridge v. Heartland Express Inc. of Iowa*, No. 3:24-CV-05486-DGE, 2024 WL 4164245, at *4 (W.D. Wash. Sept. 12, 2024) (stating that when a plaintiff "does not allege that he was offered employment or an interview," he "does not suggest that the deprivation of information compromised his bargaining power in pay negotiations, placed him at a disadvantage relevant to other applicants, or resulted in him having to exit a lengthy interview process after learning the pay was insufficient for his needs."). Indeed, Mr. Milito himself argues that he lacks Article III standing. Mr. Milito's conclusory allegations in his complaint are insufficient to allege Article III standing. *See Lujan*, 497 U.S. at 888 (holding that neither conclusory allegations nor conclusory affirmations are sufficient to confer standing). As this Court has stated before, a nominal applicant with no interest in the position will neither receive a benefit from early pay disclosure nor be harmed by the lack thereof.

Further, the state Supreme Court's decision in *Branson* does not change this Court's Article III standing analysis. The *Branson* court did not address standing—neither federal nor statutory—

but answered the question: "What must a plaintiff prove to be deemed a 'job applicant' within the meaning of RCW 49.58.110(4)?" 2025 WL 2536266, at *1. The *Branson* decision clarifies that a plaintiff does not have to prove they are a "bona fide" or "good faith" applicant to qualify as a "job applicant" that can sue to obtain remedies under the statute. *Id.* But a plaintiff must still show an injury-in-fact for Article III purposes. *Spokeo II*, 867 F.3d at 1112. Mr. Milito has failed to plead such an injury.

Defendants also contend that this Court can find jurisdiction based on their proposed counterclaim under the Declaratory Judgment Act, 28 U.S.C. § 2201. Opp'n 10. However, a counterclaim is not relevant to whether a district court has original jurisdiction over a civil action. *See, e.g.*, *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025) ("[T]he determination of jurisdiction is based only on the allegations in the plaintiff's 'well-pleaded complaint'—not on any issue the defendant may raise." (citation omitted)); *Home Depot U. S. A., Inc. v. Jackson*, 587 U.S. 435, 442 (2019) ("A counterclaim is irrelevant to whether the district court had 'original jurisdiction' over the civil action. . . . The civil action of which the district court must have 'original jurisdiction' is the action as defined by the plaintiff's complaint . . . ." (cleaned up)). Unlike Defendants' contention, determining whether there is a case or controversy that gives a federal court the power to proceed does not rely solely on how "substantial" the claim may or may not be. *See* Opp'n 1-3, 9.[5] Federal Article III standing is a mandatory jurisdictional hurdle that exists independently of the legal theory at issue; a federal court lacks the power to rule if the plaintiff cannot demonstrate standing. *See Warth*, 422 U.S. at 498.

[5] The Court further notes that the state court is a court of general, rather than limited, jurisdiction and is a forum more than capable of adjudicating these claims, which are properly within its own judicial authority.

Federal courts are courts of limited jurisdiction, and "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction," the case must be "remanded" to state court. 28 U.S.C. § 1447(c). Accordingly, this case will be remanded to King County Superior Court.

## V. CONCLUSION

For the foregoing reasons,

1. Plaintiff's Motion to Remand, ECF No. 22, is GRANTED for lack of Plaintiff's Article III standing; and
2. This case is remanded to King County Superior Court.

DATED this 29th day of December 2025.

Barbara Jacobs Rothstein
United States District Court Judge

# EXHIBIT B

## EPOA Article III Remand Orders

In the following EPOA cases removed under CAFA, the district court remanded the action to state court on Article III grounds.

- *Atkinson* v. *Aaron's LLC*, 733 F. Supp. 3d 1056, 1067-1072 (W.D. Wash. 2024), amended by No. 23 Civ. 1742, 2024 WL 3199860 (W.D. Wash. June 26, 2024)
- *Nyannor* v. *Aramark Services Inc.*, No. 24 Civ. 1543, 2025 WL 3677478 (W.D. Wash. Dec. 18, 2025)
- *Milito* v. *Infosys Ltd.*, No. 25 Civ. 1204, 2025 WL 3677484 (W.D. Wash. Dec. 18, 2025)
- *Milito* v. *Aquent LLC*, No. 25 Civ. 1647, 2025 WL 3657372 (W.D. Wash. Dec. 17, 2025)
- *Hill* v. *Airgas USA LLC*, No. 25 Civ. 1531, 2025 WL 3640901 (W.D. Wash. Dec. 16, 2025)
- *Milito* v. *Lucid Group USA Inc.*, No. 25 Civ. 1664, 2025 WL 3640898 (W.D. Wash. Dec. 16, 2025)
- *Floyd* v. *Photon InfoTech Inc.*, No. 24 Civ. 1372, 2025 WL 3442736(W.D. Wash. Dec. 1, 2025)
- *Hill* v. *Les Schwab Tire Centers of Washington LLC*, No. 24 Civ. 425, 2025 WL 3062646 (W.D. Wash. Oct. 31, 2025)
- *Milito* v. *Snap Inc.*, No. 25 Civ. 387, 2025 WL 1587284 (W.D. Wash. June 5, 2025)
- *Hill* v. *ACV Auctions Inc.*, No. 25 Civ. 616, 2025 WL 1582249 (W.D. Wash. June 4, 2025)
- *Hill* v. *Spirit Halloween Superstores LLC*, No. 24 Civ. 1644, 2024 WL 5117460 (W.D. Wash. Dec. 16, 2024)
- *Hein* v. *Crash Champions, LLC*, No. 24 Civ. 1176, 2024 WL 5039900 (W.D. Wash. Dec. 9, 2024)
- *Spencer* v. *Total Renal Care, Inc.*, No. 24 Civ. 1359, 2024 WL 4834901 (W.D. Wash. Nov. 20, 2024)
- *Kent* v. *HCL Technologies Ltd.*, No. 24 Civ 1332, 2024 WL 4825383 (W.D. Wash. Nov. 19, 2024)

- *Wright* v. *HP Inc.*, No. 24 Civ. 1261, 2024 WL 4678268 (W.D. Wash. Nov. 5, 2024)
- *Spencer* v. *Jeld-Wen, Inc.*, No. 23 Civ. 1757, 2024 WL 4566581 (W.D. Wash. Oct. 24, 2024)
- *Spencer* v. *Walmart Inc.*, No. 23 Civ. 1793, 2025 WL 2910569 (W.D. Wash. Oct. 14, 2024)
- *Liu* v. *Veeva Systems Inc.*, No. 23 Civ. 1784, 2024 WL 4263176 (W.D. Wash. Sept. 23, 2024)
- *Partridge* v. *Heartland Express Inc. of Iowa*, No. 24 Civ. 5486, 2024 WL 4164245 (W.D. Wash. Sept. 12, 2024)
- *Atkinson* v. *Penney Opco LLC*, No. 23 Civ. 1806, 2024 WL 3579910 (W.D. Wash. July 30, 2024)
- *Watson* v. *Deacon Construction, LLC*, No. 24 Civ. 82, 2024 WL 3579912 (W.D. Wash. July 30, 2024)
- *Spencer* v. *Vera Whole Health, Inc.*, No. 24 Civ. 337, 2024 WL 3276578 (W.D. Wash. July 2, 2024)

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

Hasbro, Inc.; Wizards of the Coast LLC

Name(s) of counsel (if any):

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Kannon K. Shanmugam; Masha G. Hansford

Address: 2001 K Street, N.W., Washington, DC 2006

Telephone number(s): (202) 223-7300

Email(s): mhansford@paulweiss.com

Is counsel registered for Electronic Filing in the 9th Circuit? (●) Yes ( ) No

---

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

John Milito

Name(s) of counsel (if any):

EMERY REDDY, PLLC
Timothy W. Emery; Patrick B. Reddy; Paul Cipriani

Address: 600 Stewart Street, Suite 1100, Seattle, WA 98101

Telephone number(s): (206) 442-9106

Email(s): emeryt@emeryreddy.com

*To list additional parties and/or counsel, use next page.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Continued list of parties and counsel: *(attach additional pages as necessary)*

**Appellants**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit? ○ Yes ○ No

**Appellees**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*